IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
ASHEVILLE DIVISION
No. 1:17-CV-00251-RJC

| | |
|---|---|
| JOHNATHAN KEVIN HOWELL, ) | |
| ) | |
| Plaintiff, ) | |
| ) | <u>ORDER</u> |
| v. ) | |
| ) | |
| NANCY A. BERRYHILL, ) | |
| Acting Commissioner for ) | |
| Social Security Administration ) | |
| ) | |
| Defendant. ) | |

**THIS MATTER** comes before the Court on the parties' cross Motions for Summary Judgment, (Doc. Nos. 9, 14); Plaintiff's Motion for Remand, (Doc. No. 17), and the parties' briefs and exhibits in support. The motions are ripe for adjudication.

**I.    BACKGROUND**

**A.    Procedural Background**

On February 16, 2009, at the age of twenty-two, Johnathan Kevin Howell ("Plaintiff") was found to be disabled as of August 23, 2008 and was awarded disability insurance benefits. (Doc. No. 6-1: Administrative Record ("Tr.") at 74). Subsequently, the Social Security Administration determined that Plaintiff was no longer disabled as of August 1, 2015. Plaintiff appealed this finding and, after a hearing, an Administrative Law Judge ("ALJ") determined that Plaintiff experienced medical improvement such that he no longer qualified as disabled. (Tr. 11–22). The

1

Appeals Council denied Plaintiff's request for review of this decision. (Tr. 1–5). After having exhausted his administrative remedies, Plaintiff now seeks judicial review of Defendant's denial of his social security claim in this Court.

## B. Factual Background

The question before the ALJ was whether Plaintiff's disability had ended under Section 223(f) of the Social Security Act ("SSA"). (Tr. 11). To qualify for disability benefits, a claimant must show that he is unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months. 42 U.S.C. § 423(d)(1). In a typical social security case, when the issue is whether a claimant is disabled and should therefore be granted Social Security benefits in the first place, an ALJ applies a five-step sequential evaluation process. See 20 C.F.R. §§ 404.1520, 416.920 (2018). "Once a claimant has been found disabled under the [SSA], a presumption of continuing disability arises." Sykes v. Colvin, No. 5:15-CV-00228-RN, 2016 WL 3129174, at *2 (E.D.N.C. June 2, 2016) (citing Bellamy v. Sec'y of Health & Human Servs., 755 F.2d 1380, 1381 (9th Cir. 1985)). The Commissioner may not terminate benefits unless substantial evidence demonstrates sufficient medical improvement in a claimant's impairments such that the claimant is able to engage in substantial gainful activity. See 42 U.S.C. §§ 1382c(a)(4)(A), 423(f); 20 C.F.R. §§ 404.1594, 416.994 (2017). To determine if Plaintiff continues to be disabled, the ALJ must follow an eight-step evaluation process. See 20 C.F.R. § 404.1594.

After reviewing Plaintiff's record and conducting a hearing, the ALJ found that Plaintiff was no longer disabled as of August 1, 2015. (Tr. 22). In reaching his conclusion, the ALJ used the eight-step sequential evaluation process established by the Social Security Administration for determining if a claimant continues to be disabled. The eight steps are as follows:

> (1) Is the claimant presently engaged in substantial gainful activity? If so, and any applicable trial work period has been completed, the claimant's disability ends. If not, proceed to step two.
>
> (2) Does the claimant have an impairment, or combination of impairments, which meets or equals an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1? If so, the claimant's disability continues. If not, proceed to step three.
>
> (3) Has there been medical improvement as shown by a decrease in the medical severity of the impairment(s) present at the time of the CPD[1]? If so, proceed to step four. If not, proceed to step five.
>
> (4) Was any medical improvement related to the ability to work (i.e., has there been an increase in the claimant's Residual Functional Capacity ("RFC"))? If so, proceed to step six. If not, proceed to step five.
>
> (5) Is there an exception to medical improvement? If not, the claimant's disability continues. If an exception from the first group of exceptions to medical improvement applies (i.e., substantial evidence shows that the claimant has benefited from "advances in medical or vocational therapy or technology" or "undergone vocational therapy" if either is "related to [the] ability to work"), see 20 C.F.R. §§ 404.1594(d) & 416.994(b)(3), proceed to step six. If an exception from the second group applies (i.e., disability determination was fraudulently obtained, claimant was uncooperative, unable to be found, or failed to follow prescribed treatment, see 20 C.F.R. §§ 404.1594(e) & 416.994(b)(4), the claimant's disability ends.
>
> (6) Is the claimant's current combination of impairments severe? If so, proceed to step seven. If not, the claimant's disability ends.
>
> (7) Does the claimant possess the [RFC] to perform claimant's past relevant

---

[1] "CPD" stands for "comparison point decision" and represents the date that an ALJ finds was the most recent favorable medical decision finding that a claimant was disabled.

3

work? If so, the claimant's disability ends. If not, proceed to step eight.

(8) Does the claimant's [RFC], when considered with the claimant's age, education, and work experience, allow the claimant to do other work? If so, the claimant's disability ends. If not, the claimant's disability continues.

20 C.F.R. §§ 404.1594(f), 416.994(b)(5). "Although the claimant retains the burden to prove disability, the Commissioner has the burden to produce evidence to meet or rebut the presumption of continuing disability." Sykes v. Colvin, No. 5:15-CV-00228-RN, 2016 WL 3129174, at *3 (E.D.N.C. June 2, 2016). In this case, the ALJ determined at the eighth step that Plaintiff was not disabled. (Tr. 21–22).

In doing so, the ALJ concluded that, "[a]s of August 1, 2015, considering the claimant's age, education, work experience, and [RFC] based on the impairments present as of August 1, 2015, the claimant was able to perform a significant number of jobs in the national economy." (Tr. 21). The ALJ cited that the Vocational Expert ("VE") testified that Plaintiff would be able to perform the requirements of representative occupations such as (1) cleaner, (2) laundry worker, and (3) dryer attendant. Accordingly, the ALJ found that because Plaintiff "was capable of making a successful adjustment to work that existed in significant numbers in the national economy[,]" [a] finding of 'not disabled'" as of August 1, 2015 was appropriate. (Tr. 22).

## II.  STANDARD OF REVIEW

The Court must decide whether substantial evidence supports the final decision of the Commissioner and whether the Commissioner fulfilled his lawful duty

4

in his determination that Plaintiff was no longer disabled under the Social Security Act. See 42 U.S.C. §§ 405(g) and 1382(c).

The SSA, 42 U.S.C. § 405(g) and § 1383(c)(3), limits this Court's review of a final decision of the Commissioner to (1) whether substantial evidence supports the Commissioner's decision, Richardson v. Perales, 402 U.S. 389, 390, 401 (1971); and (2) whether the Commissioner applied the correct legal standards, Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990); see also Hunter v. Sullivan, 993 F.2d 31, 34 (4th Cir. 1992) (per curiam). A district court does not review a final decision of the Commissioner de novo. Smith v. Schweiker, 795 F.2d 343, 345 (4th Cir. 1986); King v. Califano, 599 F.2d 597, 599 (4th Cir. 1979); Blalock v. Richardson, 483 F.2d 773, 775 (4th Cir. 1972). As the SSA provides, "[t]he findings of the [Commissioner] as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g). In Smith v. Heckler, the Fourth Circuit noted that "substantial evidence" has been defined as being "more than a scintilla and [do]ing more than creat[ing] a suspicion of the existence of a fact to be established. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." 782 F.2d 1176, 1179 (4th Cir. 1986) (quoting Perales, 402 U.S. at 401); see also Seacrist v. Weinberger, 538 F.2d 1054, 1056–57 (4th Cir. 1976) ("We note that it is the responsibility of the [Commissioner] and not the courts to reconcile inconsistencies in the medical evidence….").

The Fourth Circuit has long emphasized that it is not for a reviewing court to weigh the evidence again, nor to substitute its judgment for that of the Commissioner,

assuming the Commissioner's final decision is supported by substantial evidence. Hays, 907 F.2d at 1456; see also Smith v. Schweiker, 795 F.2d at 345; Blalock, 483 F.2d at 775. Indeed, this is true even if the reviewing court disagrees with the outcome–so long as there is "substantial evidence" in the record to support the final decision below. Lester v. Schweiker, 683 F.2d 838, 841 (4th Cir. 1982).

## III. DISCUSSION

### A. Plaintiff's Motion to Remand

The Court first addresses Plaintiff's Motion to Remand, (Doc. No. 17). In his Remand Motion, Plaintiff requests a new hearing before a different ALJ on the grounds that the ALJ and the Administrative Appeals Judge presiding over his claim were not constitutionally appointed. (Doc. No. 17). In Lucia v. SEC, 138 S. Ct. 2044, 2055, (2018), the Supreme Court held that ALJs of the Securities and Exchange Commission are "Officers of the United States" and thus subject to the Appointments Clause. However, Lucia elucidated that, in the context of Appointments-Clause challenges, only "one who makes a timely challenge" is entitled to relief. Lucia, 138 S. Ct. at 2055 (quoting Ryder v. United States, 515 U.S. 177, 182-83 (1995)). In Lucia, the Supreme Court acknowledged the challenge was timely because it was made before the Commission. Id. To the extent Lucia applies to Social Security ALJs, Plaintiff has forfeited the issue by failing to raise it during his administrative proceedings. See, e.g., United States v. L.A. Tucker Truck Lines, Inc., 344 U.S. 33, 38 (1952) (holding that parties may not wait until they are in court to challenge agency appointments); see also Elgin v.

6

Dep't of Treasury, 567 U.S. 1, 23 (2012) (requiring plaintiff to exhaust her constitutional claim before seeking review in federal court). Because plaintiff failed to timely raise her Appointments Clause claim, it has been forfeited, and no remand is necessary on that basis. Meadows v. Berryhill, No. 7:18-CV-17-BO, 2019 WL 938880, at *2 (E.D.N.C. Feb. 25, 2019); Shipman v. Berryhill, No. 1:17-CV-00309-MR, 2019 WL 281313, at *3 (W.D.N.C. Jan. 22, 2019); Britt v. Berryhill, No. 1:18-CV-00030-FDW, 2018 WL 6268211, at *2 (W.D.N.C. Nov. 30, 2018); Meanel v. Apfel, 172 F.3d 1111, 1115 (9th Cir. 1999) (as amended) (holding that the plaintiff forfeits issues not raised before the ALJ or Appeals Council). For these reasons, this Court **DENIES** Plaintiff's Motion to Remand, (Doc. No. 17), and now proceeds to address the arguments made on summary judgment.

### B. Cross Motions for Summary Judgment

On appeal before this Court, Plaintiff argues that the ALJ erred in two ways: (1) the ALJ failed to properly assess Plaintiff's vocational limitations as required by Mascio v. Colvin, 780 F.3d 632 (4th Cir. 2015), and subsequent case law, and (2) the Secretary failed to meet her burden of proof to establish cessation of Plaintiff's continuing disability. The Court disagrees with both of Plaintiff's arguments for the reasons set forth below.

#### 1. The ALJ acted in accordance with *Mascio* and subsequent case law.

Plaintiff argues that the hypothetical question posed to the VE, and relied upon by the ALJ, failed to accurately set forth Plaintiff's mental limitations. Specifically, Plaintiff argues that the ALJ violated the standard established in

7

Mascio when the ALJ stated the hypothetical to the VE as "Would be able to perform and maintain concentration and persistence for simple, routine, repetitive tasks for two-hour segments." (Doc. No. 10 at 22 (quoting Tr. 59)). But this quoted language does not encompass the full hypothetical posed to the VE. Although Plaintiff conveniently extracts language from the ALJ's question to support his argument, the full hypothetical was phrased as follows:

> So the first hypothetical, assume no exertional limits. Assume no binocular vision. Assume that he would be able to perform and maintain concentration and persistence for simple, routine, repetitive tasks for two-hour segments, adapt to changes in the work setting, that he would be limited to work that requires no more than occasional interaction with the public, coworkers and supervisors. And he would be unable to meet fast paced, high production demand jobs. With those limits, could he perform his past work at the grocery store?

(Tr. 59). Plaintiff argues that the ALJ did not account for Plaintiff's moderate limitations in concentration, persistence and pace ("CPP") by restricting the hypothetical questions to simple, routine tasks for unskilled work and therefore violated Mascio. (Doc. No. 10 at 22).

"[T]he ability to perform simple tasks differs from the ability to stay on task." Mascio v. Colvin, 780 F.3d 632, 638 (4th Cir. 2015). "Only the latter limitation would account for a claimant's limitation in concentration, persistence, or pace." Id. As a result, Mascio stands for the rule that an ALJ must either adopt a limitation that addresses a claimant's ability to stay on task or explain why such a limitation is unnecessary, even in the face of the claimant's CPP limitations. Grant v. Colvin, No. 1:15-CV-00515, 2016 WL 4007606, at *9 (M.D.N.C. July 26, 2016). Numerous courts in this district have found that, when an ALJ limits a plaintiff to performing

8

simple, routine tasks for unskilled work *and* includes additional limitations, such as performing that work at a nonproduction pace,[2] in a stable environment, with only occasional public contact, the ALJ "has sufficiently accounted for Plaintiff's moderate limitations in concentration, persistence and pace and is not grounds for remand."[3]  Here, unlike in Mascio, the ALJ did not simply limit Plaintiff to performing simple, routine, or unskilled work.  The ALJ sufficiently accounted for Plaintiff's moderate limitations in CPP by restricting Plaintiff to performing simple, routine, repetitive tasks for two-hour segments in an environment that requires no more than occasional interaction with people and that does not involve fast-paced,

---

[2] The Court notes that, in a recent opinion, the Fourth Circuit admonished an ALJ for limiting the plaintiff to performing work that does not require "a production rate or demand pace" without explaining what those terms mean:

> Without further explanation, we simply cannot tell whether the RFC finding—particularly the portion restricting Thomas to jobs that do not require a "production rate" or "demand pace"— properly accounts for Thomas's moderate limitations in concentration, persistence, and pace. On remand, the ALJ will need to establish for how long, and under what conditions, Thomas is able "to focus [her] attention on work activities and stay on task at a sustained rate." 20 C.F.R. § Pt. 404, Subpt. P, App. 1 § 12.00E(3). Only then will we or any court be able to meaningfully review the ALJ's RFC finding.

Thomas v. Berryhill, 916 F.3d 307, 312 n.5 (4th Cir. 2019), as amended (Feb. 22, 2019).  Unlike Thomas, the ALJ here included a time limit of performing work in two-hour segments and thus sufficiently accounted for Plaintiff's moderate limitations in CPP.

[3] Linares v. Colvin, No. 5:14-cv-00120-GCM, 2015 WL 4389533, at *4 (W.D.N.C. July 15, 2015).  See, e.g., Robinson v. Berryhill, No. 3:16-cv-00866-GCM, 2018 WL 1718262, at *2 (W.D.N.C. Apr. 9, 2018) (citing Gordon v. Berryhill, No. 3:16-cv-00103, 2017 WL 5759940, at *2 (W.D.N.C. Nov. 28, 2017)); White v. Colvin, No. 1:14-cv-00161, 2016 WL 1600313 (W.D.N.C. Apr. 21, 2016); Horning v. Colvin, No. 3:14-cv-00722, 2016 WL 1123103, at *4 (W.D.N.C. Mar. 21, 2016).

9

high-production demands. Taylor v. Colvin, No. 3:14-cv-00510-GCM, 2016 WL 1032345, at *7 (W.D.N.C. Mar. 15, 2016) ("Unlike in Mascio, the ALJ did not simply limit Plaintiff to simple, routine or unskilled work. Rather, by restricting Plaintiff to an environment that does not involve assembly line pace, the ALJ accounted for his limitation in pace. By limiting Plaintiff to a low production setting, she accounted for his limitations in concentration and persistence."). Accordingly, the ALJ complied with Mascio and subsequent case law.

Additionally, the Court finds that the ALJ considered many factors in assessing Plaintiff's mental RFC, including both record medical evidence that Plaintiff had experienced medical improvement[4] as well as Plaintiff's activities performed in daily living.[5] Therefore, the ALJ complied with requirement to "'evaluate every medical opinion' presented to him, '[r]egardless of its source,'" Brown v. Commissioner, 873 F.3d 251, 271 (4th Cir. 2017) (quoting 20 C.F.R.

---

[4] The ALJ discussed that medical evidence—and Plaintiff's own testimony—showed that Plaintiff's medications were working well and controlling his symptoms. (Tr. 18). "If a symptom can reasonably be controlled by medication or treatment, it is not disabling" under the Act. Gross v. Heckler, 785 F.2d 1163, 1166 (4th Cir. 1986). The ALJ discussed the findings of a consultative psychological assessment and the State agency psychological consultants and considered their determinations when evaluating Plaintiff's RFC. (Tr. 18–19).

[5] The ALJ also considered Plaintiff's activities performed in daily living—such as helping with housework; mowing the yard; spending time with friends, family, and others in public; playing guitar and computer games; attending church; and working part-time in a gas station since January 2016, doing janitorial and maintenance work—in determining Plaintiff's RFC. The Fourth Circuit has noted that a claimant's daily activities may support a finding that that he is not disabled. See Mickles v. Shalala, 29 F.3d 918, 921 (4th Cir. 1994) (noting that the claimant performed a wide range of housework); Gross v. Heckler, 785 F.2d at 1166 (explaining that the claimant performed several activities including cooking, washing dishes, and generally taking care of the house).

10

§ 404.1527(c)).[6] In sum, the Court finds that substantial evidence supported the ALJ's RFC determination and that the hypothetical question posed to the VE was consistent with Mascio because the ALJ properly accounted for Plaintiff's moderate limitations in CPP in both the RFC and the hypothetical to the VE.

> 2. The ALJ met his burden of proof to establish that Plaintiff is no longer disabled.

"Once a claimant has been found disabled under the [SSA], a presumption of continuing disability arises." Sykes, 2016 WL 3129174, at *2 (citing Bellamy v. Sec'y of Health & Human Servs., 755 F.2d 1380, 1381 (9th Cir. 1985)). "Although the claimant retains the burden to prove disability, the Commissioner has the burden to produce evidence to meet or rebut the presumption of continuing disability." Id.

Plaintiff contends that the medical evidence, as well as the corroborating testimony of Plaintiff's aunt, make clear the continuing nature of Plaintiff's severe mental impairments. (Doc. No. 10 at 25). Specifically, he points to the treatment notes from Skyland Behavioral Health Associates where Plaintiff was treated by Diane Akert, a licensed clinical social worker, and claims that those notes support

---

[6] Plaintiff cited Brown in his summary judgment brief, but he did not explain what medical opinion the ALJ failed to evaluate. Mere mention of a possible argument, "in the most skeletal way, leaving the court to put flesh on its bones" is insufficient. Duckworth v. Berryhill, No. 5:15-CV-00129, 2017 WL 1528757, at *5 (W.D.N.C. Apr. 26, 2017) (quoting Rice v. Astrue, 2010 WL 538871, at *3 (brackets and ellipses omitted)). Additionally, "[a]ny issue not raised directly by [a] [p]laintiff is deemed waived." Id. (quoting Bunton v. Colvin, 2014 WL 639618, at *5 (M.D.N.C. Feb. 18, 2014)).

11

the opinion of Ms. Akert regarding Plaintiff's functional limitations. (Tr. 824–901). The Court determines that the ALJ did consider the opinions of Plaintiff's aunt and Ms. Akert and explained in his decision why he did not give them any weight.[7] (Tr. 19, 20). In fact, he explained why their opinions contravened record evidence demonstrating Plaintiff's medical improvement.

The ALJ explained that record evidence documented Plaintiff's mental impairments had improved and were stable with the use of prescribed medication, (Tr. 18, 825, 859, 877, 884, 899), and noted that Plaintiff had not had any inpatient psychiatric hospitalizations since the CPD. In fact, Plaintiff had experienced increased focus, improved sleep and mood, and minimal anxiety, (Tr. 877), and his hallucinations were controlled with no side effects. (Tr. 18, 630, 877). The ALJ cited that when Plaintiff was seen for psychological examination by Dr. Deborah Barnett, PhD, a psychologist, on June 2, 2015, Dr. Barnett described Plaintiff as cooperative and pleasant and described Plaintiff's mood as euthymic. (Tr. 18). Dr. Barnett found

---

[7] The ALJ found that Ms. Akert's opinion—that Plaintiff is still disabled because, even with his present medication, Plaintiff experiences a significant amount of delusions and emotional distress which would make it difficult for him to function normally—contradicted record evidence demonstrating Plaintiff's improvement of symptoms with his current medication and continued treatment. (Tr. 19). Therefore, he did not give Ms. Akert's opinion much weight. Regarding Plaintiff's aunt, the ALJ noted the nature of the relationship to Plaintiff and that Plaintiff's aunt is not considered a medical source as defined in the Regulation nor was she qualified to render opinions about Plaintiff's ability to perform work-related activities. (Tr. 20). Although he considered Plaintiff's aunt's testimony, the ALJ found that it contradicted record evidence of demonstrated medical improvement, and therefore, he ultimately rejected that testimony. These were sufficient reasons to discredit Plaintiff's aunt's testimony. See Morgan v. Barnhart, No. 04-1692, 142 Fed. Appx. 716, 724–25 (4th Cir. Aug. 5, 2005); Henderickson v. Berryhill, No. 1:16-cv-00367-MOC-DLH, 2018 WL 1431751, at *8 (W.D.N.C. Mar. 22, 2018).

that Plaintiff did not have any difficulty understanding the questions he was asked, his responses were consistent and coherent, and his thought processes were within normal limits and his memory and concentration were average. (Tr. 19, 631). Additionally, the ALJ cited to the State agency physician's assessment of Plaintiff in June 2015, which was generally consistent with Dr. Barnett's assessment of Plaintiff and demonstrated Plaintiff's medical improvement and ability to perform some type of substantial gainful activity. (Tr. 19).

In sum, the Commissioner met its burden of proof by pointing to substantial evidence demonstrating Plaintiff's medical improvement such that Plaintiff is able to engage in substantial gainful activity—that is, that Plaintiff can engage in simple, routine, repetitive tasks for two-hour segments, that require no more than occasional interaction with the public, coworkers and supervisors and do not entail fast-paced, high-production-demand jobs. Therefore, the Court **DENIES** Plaintiff's Motion for Summary Judgment, (Doc. No. 9), and **GRANTS** Defendant's Motion for Summary Judgment, (Doc. No. 14).

## IV. CONCLUSION

Because this Court finds that the ALJ properly accounted for Plaintiff's nonexertional mental functions in his RFC determination and that the Commissioner met his burden of proof, the Court affirms the decision of the ALJ. Substantial evidence supports the ALJ's determination, and remand would be improper because the ALJ's decision is not sorely lacking as to frustrate meaningful review. See Monroe v. Colvin, 826 F.3d 176 (4th Cir. 2016) (noting that an ALJ should "build an accurate

and logical bridge from the evidence to his conclusion" to allow courts to conduct a meaningful review (quoting Clifford v. Apfel, 227 F.3d 863, 872 (7th Cir. 2000)).

**IT IS, THEREFORE, ORDERED** that:

1. Plaintiff's Motion to Remand, (Doc. No. 17), is **DENIED**;

2. Plaintiff's Motion for Summary Judgment, (Doc. No. 9), is **DENIED**;

3. Defendant's Motion for Summary Judgment, (Doc. No. 14), is **GRANTED**;

4. The Commissioner's determination is **AFFIRMED**; and

5. The Clerk of Court is directed to close this case.

Signed: March 21, 2019

Robert J. Conrad, Jr.
United States District Judge